## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 8:06CR360** |
| **vs.** | ) | |
| | ) | **REPORT AND** |
| **RUSSELL M. CLARK,** | ) | **RECOMMENDATION** |
| | ) | |
| **Defendant.** | ) | |

This case is before the court on defendant Russell M. Clark's Motion to Suppress (#15). An evidentiary hearing was held on February 1, 2007. The Transcript of the hearing (#24) was filed February 7, 2007, at which time the motion was deemed submitted.

The defendant moves the court for the suppression of evidence and statements obtained after he was stopped by officers of the Omaha Police Department on August 23, 2006. Specifically, the defendant alleges he was stopped without a reasonable, articulable suspicion to believe that he had committed a crime, in violation of the Fourth Amendment to the United States Constitution, and that statements he made following his arrest were obtained in violation of his Fifth Amendment rights under the United States Constitution and *Miranda v. Arizona*.

### FACTUAL BACKGROUND

Kevin Cave testified that he is a 4½ year employee of the Omaha Police Department, currently serving as a uniformed officer answering radio calls, traffic enforcement, and enforcement of ordinances. On August 23, 2006 at approximately 4:44 A.M., he made contact with Russell Clark in Park East Park in the area of 27th and

St. Mary's (5:14-21).  Cave noted that he and his partner, Officer Michael Dose, were in the area because of past complaints of drug activity at the nearby Jackson Tower and in the park (6:1-5).

Cave testified that he observed three individuals in the park.  He saw them stand up and walk westward through the park.  Cave circled the park and approached the three as they exited the park (6:8-13).  Cave and his partner then approached the three, believing that the three individuals were violating park curfew, as the park was closed between 11:00 P.M. and 5:00 A.M. (6:10-19).

After approaching the individuals, Cave confirmed through dispatch that the time was 4:44 A.M. (7:7-15).  While Cave's partner spoke with two of the individuals, Cave spoke with Clark and turned him around to pat him down.  As Cave patted Clark down, he felt something in Clark's front pocket which felt like rocks or small little rocks.  He believed that these small rocks could be crack cocaine.  Cave told Clark to place his hands behind his back.  Cave then grabbed Clark by the wrist.  Clark twisted, pulled away, pushed Cave, and took off running (8:1-10), as Cave pursued on foot.

Cave testified that he followed Clark north on 26th Avenue to Dewey, west on Dewey to 27th, and then north on 27th.  As Clark ran north on 27th, Cave observed him make a gesture as if throwing something by a U-Haul truck.  As Clark continued running north on 27th near Harney, he again made a gesture as if he was throwing something towards a parked vehicle.  Clark continued running and was apprehended on 28th Street at either Douglas or Farnam (8:18-9:15).

After Clark was taken into custody, Cave retraced the route of the pursuit and under a parked vehicle on Harney, he located a plastic bag containing a quantity of crack cocaine

(9:23-10:7).  Cave noted that the baggie was near the same car where he had earlier observed Clark make a throwing gesture (11:2-6).  Cave then walked back to the cruiser where Clark was held and showed Clark the baggie of crack cocaine, but did not speak to Clark.  Clark then stated, "You didn't see me throw that.  I turned around and looked and you weren't there." (11:16-21).

On cross-examination Cave testified that the three individuals were seated on a park bench on the west side of the park when he first observed them (12:24-13:3).  Cave admitted that on the night of the arrest there were signs in the park indicating park hours, but he did not recall the condition of the signs (13:24-14:3).  Cave also admitted that he rechecked the signs the day before the suppression hearing and new or newer-looking signs were in place (14:9-14).  Cave testified he recognized the area in Exhibit 101 as Park East Park from the playground equipment, and he admitted that the sign pictured in the exhibit states that the park is closed from 8:00 P.M. to 5:00 A.M. (14:19-15:5).  Cave also admitted that Exhibits 103, 104, and 105 are photographs depicting locations in Park East Park.

On cross-examination Cave testified that he typically arrests individuals for violation of park curfew rules (24:19-25:3) and that when he first contacted Clark and the other individuals, they were exiting the park and had just stepped onto the sidewalk (25:13-16).

On redirect examination Cave testified that on the night of Clark's arrest there were signs in the park notifying the public that the park was closed between certain hours, but that he was unaware of the condition of those signs (29:22-30:6).  On recross examination Cave testified that while not sure, he believed all city parks have the same hours (30:23-31:2).

-3-

Michael Dose testified that he has been an Omaha police officer since November of 2001 and was an officer for the City of Rock Island, Illinois from 1994 to 2001.  On August 23, 2006, at approximately 4:44 A.M., while patrolling with his partner, Officer Kevin Cave, he observed three individuals in the park at approximately 27th and St. Mary's.  He first observed the three individuals seated on a bench, but as his cruiser drove by, they left the bench and walked eastbound through the middle of the park (33:22-34:1).  After stopping the individuals and starting to pat them down, Dose observed Officer Cave struggle with Clark and observed Clark push Cave away and run north on 26th Avenue (34:14-19).  Dose observed Cave pursue Clark on foot.

Later, after Clark was taken into custody, Dose and Cave walked the path Clark had taken during his flight.  A baggie of crack cocaine was found under a car where Cave had told Dose that Clark had thrown something (35:9-22).  Dose then accompanied Cave to a cruiser,  observed Cave show the baggie to Clark, and heard Clark state, "You didn't see me throw that.  When I turned around nobody was there."  (36:6-9).  Dose testified he believes that city ordinance 21-1[1] gives the police the power to arrest for park curfew violations, and that in the past he has arrested people for park curfew violations (36:21-37:4).

On cross-examination Dose testified that he believed the curfew hours for the park are 11:00 P.M. to 5:00 A.M. (37:19-21), but he admitted that Exhibit 101 shows a sign listing that the park is closed from 8:00 P.M. until 5:00 A.M. (39:10-12).  He also admitted the sign was hard to read (39:13-14).

---

[1]A copy of the ordinance itself was not offered in evidence.

At the hearing on the motion to suppress, the court received a Stipulation of the parties that, if called, the investigator of the Federal Public Defender's Office would testify that on December 12, 2006 he visited the park in question; that the park signs were in the same condition as shown in the defendant's exhibits; that all the letters and numbers were worn off; and that he couldn't read the faded sign absent getting very close (47:7-48:2).

## LEGAL ANALYSIS

### A.  Probable Cause for Arrest

The government asserts at page 3 of its brief that the defendant committed a misdemeanor offense by being in the park during curfew hours; thus, the officers had probable cause to arrest him.  As noted above, the city ordinance(s) establishing the park curfew and providing for its enforcement were not offered in evidence.  "The provisions of a municipal ordinance are not 'adjudicative facts' of which judicial notice may be taken under Federal Rule of Evidence 201.  *See* 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 201.03[3] (2d ed. 2005)."  *United States v. Sledge*, No. 4:05CR3072, Filing [31] at p.30 n.9, 2005 WL 2347247 at *14 n.9 (D. Neb., Sept. 26, 2005), *aff'd*, 460 F.3d 963 (8th Cir. 2006), *petition for cert. filed*, Feb. 8, 2007.  Since the court cannot take judicial notice of the city ordinance in question, the court declines to find that the officers had probable cause to detain the defendant for its violation, notwithstanding the provisions of Neb. Rev. Stat. § 29-404.02(1)(b). [2]

---

[2]Section 29-404.02(1)(b)(iv) provides that a peace officer may arrest a person without a warrant if the officer has reasonable cause to believe that the person has committed a misdemeanor in the presence of the officer.

**B.  Reasonable Suspicion for *Terry* Stop**

The defendant was initially stopped outside the park and was, unquestionably, entitled to the protection of the Fourth Amendment as he walked down the street.  *See Terry v. Ohio*, 392 U.S. 1, 9 (1968).  As in *Terry*, "[t]he question is whether in all the circumstances of this on-the-street encounter, his right to personal security was violated by an unreasonable search and seizure," *id.*, or, in other words, whether it was unreasonable for the officers to seize the defendant and subject him to a limited search for weapons without probable cause for an arrest.  *See id.* at 15.

In determining whether the seizure and search were "unreasonable," the court must consider two factors: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  *Id.* at 18-19.  The officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.

As the *Terry* Court observed, "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry v. Ohio*, 392 U.S. at 23.  "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."  *Id.* at 24.  "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent

-6-

man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  *Id.* at 27.

In determining whether Officer Cave was initially justified in stopping the defendant, I note that the level of suspicion required for a *Terry* stop is far less demanding than that for probable cause.  *See United States v. Gonzales*, 220 F.3d 922, 925 (8th Cir. 2000). "A reasonable suspicion may be justified even if there are innocent explanations for a defendant's behavior when the circumstances are considered in the totality." *United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1999).  In *United States v. Arvizu*, 534 U.S. 266, 273 (2002), the Supreme Court stressed that reviewing courts must look at "the totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing.  "This process allows officers to drawn on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."  *Id.*  To justify a *Terry* stop, the likelihood of criminal activity need not rise to the level required for probable cause, ***and it falls considerably short of satisfying a preponderance of the evidence standard****.  Id.* at 274 (emphasis added); *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir.), *cert. denied*, 516 U.S. 872 (1995).

Finally, even "[a] mistaken premise can furnish grounds for a *Terry* stop, if the officers do not know that it is mistaken and are reasonable in acting upon it."  *United*

-7-

*States v. Ornelas-Ledesma*, 16 F.3d 714, 718 (7th Cir. 1994), *judgment vacated on other*

*grounds*, 517 U.S. 690 (1996) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 184-86 (1990));

*accord United States v. Bailey*, 417 F.3d 873, 977 (8th Cir. 2005), *cert. denied*, 126 S. Ct.

1894 (2006); *see also United States v. DeLeon-Reyna*, 930 F.2d 396, 399 (5th Cir. 1991)

(en banc) (per curiam); and *United States v. Walraven*, 892 F.2d 972, 974-75 (10th Cir.

1989)).  Within the Eighth Circuit,

> the distinction between a mistake of law and a mistake of fact is irrelevant to
> the fourth amendment inquiry.  As we held in *United States v. Sanders*, 196
> F.3d 910, 913 & n.3 (8th Cir. 1999), the validity of a stop depends on
> whether the officer's actions were objectively reasonable in the
> circumstances, and in mistake cases the question is simply whether the
> mistake, whether of law or of fact, was an objectively reasonable one.  "The
> determination of whether probable cause [or reasonable suspicion] existed
> is not to be made with the vision of hindsight, but instead by looking to what
> the officer reasonably knew at the time."  *Id.* at 913.

*United States v. Smart*, 393 F.3d 767, 770 (8th Cir.), *cert. denied*, 545 U.S. 1121 (2005);

*see also United States v. Martin*, 411 F.3d 998, 1101 (8th Cir. 2005).

In this case, the officers were patrolling in the area in response to complaints of drug

activity near and in the park.  The defendant was seen in the park at 4:44 A.M., during

curfew hours.  The curfew hours were posted, although the signs were difficult to read.

Based on the testimony of Officer Dose that he believed city ordinance 21-1 gave the

police the authority to arrest for park curfew violations, and both officers' testimony that

they had in the past arrested people for park curfew violations, I find that the officers

reasonably believed the defendant had committed a misdemeanor offense by violating the

park curfew and did not act unreasonably in conducting a *Terry* stop in this instance.

-8-

The sole justification for the pat-down search was the protection of the police officers. Such a search must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments that could be used to assault the police officer. I find that the pat-down search of the defendant's person was limited to that which was necessary for the discovery of weapons. *See Terry*, at 29-30.

### C. Development of Probable Cause

As Officer Cave conducted the pat-down search, he felt something in the defendant's front pocket which felt like rocks or small little rocks. Cave believed that these small rocks could be crack cocaine, so he told the defendant to place his hands behind his back and then grabbed the defendant by the wrist. The defendant twisted, pulled away, pushed Officer Cave, fled, and was seen throwing objects as he ran. Upon retrieving one of these objects, the officers discovered it was a plastic bag containing a quantity of crack cocaine.

"Headlong flight–wherever it occurs–is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). In this case, I find that the officers had probable cause to arrest Clark, based on Clark's headlong flight, his throwing objects away as he ran, his presence in the park during curfew in an area of town associated with illegal drug activity, and the officers' observations during the pat-down search.

The circumstances presented in this motion are also similar to those considered in *United States v. Sledge*, 406 F.3d 963 (8th Cir. 2006), *petition for cert. filed*, Feb. 8, 2007. In *Sledge*, a case that originated in Nebraska, the defendant and his companions were

detained on suspicion of procuring alcohol for a minor.  There were also two active police broadcasts concerning Sledge:  to issue a citation to him for possession of marijuana, and to interview him regarding a disturbance.  One of the officers began a pat-down search on Sledge, who resisted and tried to run away.  After a struggle involving Sledge and three police officers, Sledge was handcuffed and arrested for failing to comply and for resisting arrest.  While searching Sledge incident to the arrest, officers located in Sledge's left front pants pocket $229 in cash and two baggies containing crack cocaine. Assuming *arguendo* that the detention and pat-down search of Sledge were invalid, the Eighth Circuit determined that Sledge's actions in resisting the officers provided independent grounds for his arrest:

> "In our circuit, resistance to an illegal arrest can furnish grounds for a second, legitimate arrest."  *United States v. Schmidt,* 403 F.3d 1009, 1016 (8th Cir. 2005); *see, e.g., United States v. Dawdy,* 46 F.3d 1427, 1431 (8th Cir. 1995) (holding "a defendant's response to even an invalid arrest ... may constitute independent grounds for arrest").  "When a defendant commits a new and distinct crime during an unlawful detention, the Fourth Amendment's exclusionary rule does not bar evidence of the new crime." *United States v. Hunt,* 372 F.3d 1010, 1012, (8th Cir. 2004).  "A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct."  *United States v. Bailey,* 691 F.2d 1009, 1017 (11th Cir. 1982) (holding "police may legally arrest a defendant for a new, distinct crime, even if the new crime is in response to police misconduct and causally connected thereto").
>
> In denying Sledge's motion to suppress, the district court concluded Sledge forfeited any Fourth Amendment protection by resisting and running away from the officers, thus creating probable cause to arrest Sledge for obstructing a peace officer, in violation of Neb. Rev. Stat. § 28-906(1), and to search Sledge incident to that arrest.   We agree with this conclusion.
>
> Under Nebraska law, "A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders ... the enforcement of the penal law ... by a peace officer ... acting under

color of his or her official authority." Neb. Rev. Stat. § 28-906(1). The mere act of running away from law enforcement officers constitutes physical interference or obstacle within the meaning of this provision. *In re Interest of Richter,* 226 Neb. 874, 415 N.W.2d 476, 478 (1987). The district court found it was undisputed Sledge tried to run away, and this finding is not clearly erroneous. Officers Smith and Clarke, as well as Carriker, testified Sledge tried to run away, and Sledge admitted on direct examination he "tried to get away from" Officer Clarke. Furthermore, we agree with the district court, the officers were engaged in "the enforcement of the penal law" during the encounter by detaining Sledge for issuance of a citation pursuant to the police broadcasts. Thus, by running away from the officers, Sledge committed a new, distinct crime, thereby permitting the officers lawfully to arrest him.

Additionally, probable cause existed to arrest Sledge for resisting arrest under Neb. Rev. Stat. § 28-904(1)(a), which provides:

A person commits the offense of resisting arrest if, while intentionally preventing or attempting to prevent a peace officer, acting under color of his or her official authority, from effecting an arrest of the actor or another, he or she ... [u]ses or threatens to use physical force or violence against the peace officer or another.

*United States v. Sledge*, 460 F.3d at 966-67.

Considering all these factors, I find that the officers had probable cause to arrest the defendant.

## D. Abandonment

I further find that the defendant abandoned any objects he threw while running away from the police. Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers. *United States v. Tugwell*, 125 F.3d 600, 602 (1997), *cert. denied*, 522 U.S. 1061 (1998). The determination of abandonment "'is to be made in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of the property.'" *Id.* (quoting *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986)). "A warrantless search of

-11-

abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment." *United States v. Tugwell*, 125 F.3d at 602; *accord United States v. James*, 353 F.3d 606, 615-16 (8th Cir. 2003).

Based on the totality of the circumstances, I conclude that defendant's actions were inconsistent with a continued expectation of privacy in the items he discarded, and all such items were abandoned.

### E.   Suppression of Statements

Turning to Clark's statements, the protections of *Miranda v. Arizona*, 384 U.S. 436 (1966), "are triggered only when a defendant is both in custody and being interrogated. *United States v. Lawrence*, 952 F.2d 1034, 1036 (8th Cir.), *cert. denied*, 503 U.S. 1011 (1992). 'Interrogation' is 'express questioning,' or words or actions 'that the police should know are reasonably likely to elicit an incriminating response....' *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Lawrence,* 952 F.2d at 1036...." *United States v. Hatten*, 68 F.3d 257, 261-62 (8th Cir. 1995), *cert. denied*, 516 U.S. 1150 (1996) (parallel citations omitted).

Here, Officer Cave retrieved the plastic bag abandoned by Clark, walked back to the cruiser where Clark was held in custody, and merely showed Clark the baggie of crack cocaine.  Although the officer did not speak, Clark stated in response, "You didn't see me throw that.  I turned around and looked and you weren't there."  During oral argument, the court inquired as to the officer's purpose in showing the Clark the drugs.  Counsel replied that he could only assume the officer wanted to show the defendant, in fact, they had found what he threw and was hoping the defendant would make a statement.  (53:4-8)

I find that Officer Cave acted in a manner that he knew or reasonably should have known was likely to elicit an incriminating response. Since there is no evidence that the defendant was given and waived his *Miranda* rights, his statement should be suppressed.

## RECOMMENDATION

In summary, I find that Officer Cave had reasonable suspicion to detain defendant Clark and conduct the pat-down search pursuant to *Terry v. Ohio*; the officers developed probable cause to arrest Clark after he fled and was seen throwing objects, i.e., bags containing crack cocaine, as he ran; Clark abandoned the drugs when he threw them on the ground during his flight from Officer Cave; but Clark's statement was given in violation of *Miranda v. Arizona*.

For the foregoing reasons,

**IT IS RECOMMENDED** to the Honorable Joseph F. Bataillon that the Motion to Suppress (#15) be granted as to the defendant's statement and denied in all other respects.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) calendar days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be *reviewed de novo* and a different disposition made.

**DATED February 28, 2007.**

**BY THE COURT:**

**s/ F.A. Gossett**
**United States Magistrate Judge**

-13-